[No. 37680. En Banc. November 10, 1966.]

JAMES W. GREEN, *as Administrator, et al., Appellants,* v. FORREST S. DUNKIN, *as Administrator, et al., Defendants,* THE COUNTY OF WHATCOM, *Respondent.*[*]

*R. F. Atwood,* for appellants.

*Richard A. Nelle* and *William A. Gardiner,* for respondent.

[*]Reported in 419 P.2d 978.

PER CURIAM.—The question presented here is practically identical with that presented in the immediately preceding case[1] filed this day, and arises out of the same tragic accident. The claim challenged in this action was filed against Whatcom County by James W. Green, as administrator of the estate of his deceased wife, Patricia Lee Green, and as guardian ad litem for his son, James Glenn Green.

The claimed negligence of the county was the same as in the *Nelson* case and, after the county rejected the claim, an action was commenced thereon. As in the *Nelson* case, a summary judgment was entered dismissing the case against the county because the claim filed did not meet the statutory requirements.

The appeal from the dismissal presents the sole issue of whether there was a substantial compliance with the requirements of the county-claims statute: RCW 36.45.020 (re-enacted in 1963).[2] It provides, as a prerequisite to suits against a county, that a claim be filed which must contain, *inter alia*:

[A] statement of the actual residence of the claimant at the time of presenting and filing the claim and for a period of six months immediately prior to the time the claim accrued . . . . RCW 36.45.020

The claim, on which the present action is based, stated that

claimant and his wife had been residents of Oregon for the period of six months immediately preceding this accident . . . .

█ The information that the claimant has been a resident of Oregon[3] is not, by any stretch of the imagination, a substantial compliance with the requirement that the claim contain a statement of the actual residence of the claimant "at the time of presenting and filing the claim and for a

---

[1] *Nelson v. Dunkin, ante* p. 726, 419 P.2d 984 (1966).

[2] RCW 36.45.020 is quoted at length in the *Nelson* case, immediately preceding this one.

[3] We assume that the claimant means the state of Oregon, but there are three cities or towns in the United States named "Oregon," *i.e.*, Oregon, Illinois; Oregon, Missouri; and Oregon, Wisconsin.

period of six months immediately prior to the time the claim accrued."

The superior court properly dismissed the action against Whatcom County because there had been no substantial compliance with the county-claims statute.

The Supreme Court has no power or authority to repeal the statute, amend it, or waive compliance with its provisions.

Here, as in the *Nelson* case, the very appealing argument is made that in this particular situation the county was not in any way prejudiced by not having this information. The boy, James Glenn Green, was in a hospital in Whatcom County. The county coroner, and presumably the sheriff, had made a complete investigation of all facts relative to the collision; and the avenues of interrogatories and depositions were available, and the county had availed itself of the former.

Our answer to this argument is the same as in the *Nelson* case and, without reiterating the substance of that opinion, we adopt its reasoning as decisive of the present case.

The judgment of dismissal against Whatcom County is affirmed.

HALE, J. (dissenting)—I dissent. By a subtle process of juridical levitation, the majority has raised a minor and inconsequential section of a statute to the grandeur one expects only of a bill of rights. Every section and provision of the statute here and in the companion case of *Nelson v. Dunkin, ante* p. 726, 419 P.2d 984 (1966), has been given equal weight and each construed as though it were a fundamental charter of liberty.

The 6 months' residence statement seems of only trifling consequence to me and I would attach no greater weight or importance to it than the statute requires. Accordingly, if the provision under construction be of minor consequence in relation to the whole, if it designates the performance of acts which in and of themselves are virtually meaningless, in my opinion, the construction ought not be so strained as to charge the designated acts with grave sig-

nificance. After all, we are simply trying to find out what the legislature meant.

In this case and in *Nelson v. Dunkin, supra,* I would say the construction has not only been strained by the majority, but strained the wrong way to produce a bad result. We are dealing here with a rather useless provision of the claim statute—that part requiring merely a statement of residence for a period 6 months prior to the accident—and judicial construction ought not give it an importance it does not have.

Just what usable information is furnished the county by this innocuous provision beyond a bare confirmation of the claimant's recent address is impossible to ascertain. If the legislature had in mind the discouraging of spurious claims by people going about the state bringing tort actions against the various counties, it could have required the claimant to designate his prior addresses for the preceding 5, or 10, or 15 years, and demanded a statement of his medical history, injuries, and claims filed elsewhere, or required all kinds of other information.

The perfunctory and meaningless character of the instant provision as to residence becomes manifest when applied to two children ages 4 and 6. What real benefit does the county realize from learning their precise address during the 6 months' period next preceding the accident? A reading of the whole section demonstrates the insignificance of the residence provision and its perfunctory nature:

All such claims for damages must locate and describe the defect which caused the injury, describe the injury, and contain the amount of damages claimed, together with a statement of the actual residence of the claimant at the time of presenting and filing the claim and for a period of six months immediately prior to the time the claim accrued and be sworn to by the claimant: *Provided,* That if the claimant is incapacitated from verifying and filing his claim for damages within the time prescribed, or if the claimant is a minor, or in case the claim is for damages to real or personal property, and the owner of the property is a nonresident of the county or is absent therefrom during the time within which a claim for damages is required to be filed, the claim may be verified and

presented on behalf of the claimant by any relative or attorney or agent representing the injured person or, in case of damages to property, representing the owner thereof. RCW 36.45.020.

Taking the section as a whole, one sees that the function of filing a claim as a prerequisite to bringing a tort action against the county and against cities (RCW 35.31.010) is to enable the county or city to timely investigate the claimant, the occurrence, the injuries, and to preserve the evidence. An additional purpose—one not usually mentioned in the decisions but of equal cogency—is that the claim supplies the county or city with early information concerning the defects out of which it arose, and enables the county or city to remedy the defects and to negotiate settlement of the claim. *Frasier v. Cowlitz Cy.*, 67 Wash. 312, 121 Pac. 459 (1912); *Cook v. Yakima*, 21 Wn.2d 810, 153 P.2d 279 (1944).

Thus, the major and by far the most vital information elicited through operation of the claim statute concerns the duration, nature, kind and extent of the defects assertedly producing the injury, the causes of and damages resulting from the injury. This information enables the county or city to investigate, accept, reject or negotiate the claim, preserve the evidence, and take early steps to eliminate the defects out of which it arose. Knowledge of claimant's place of residence for 6 months prior to the accident contributes little, if anything, to the municipality's total information about the incident whether claimant lived there 6 days or 6 months. I would thus conclude that the statement in *Nelson v. Dunkin, supra,* "That claimant and his son had been residents of the State of Alaska for a period of six months immediately preceding this accident," and the even more detailed statement, *infra,* in the Green claim, gave to Whatcom County all of the useful information as to residence that the statute calls for and constituted a literal compliance with the statute. On the basis of literal compliance, the two cases should be reversed and set for trial.

But there are even more compelling reasons for holding

these two claims good. Even if one were to assume, arguendo, that neither claim met the precise demands of the statute, clearly both claims depart so slightly from a literal and most exacting reading thereof as to comply substantially. And the rule of substantial compliance is the rule of decision as to the claim statute in this state.

Lest there be any doubt as to the question of substantial compliance, and to avoid any query as to whether the claims fully apprised Whatcom County of all facts it had a right to expect under the statute, we should examine the claim in toto. Omitting the formal parts, the Green claim reads:

## I

Claimant alleges and shows that he is the surviving husband of Patricia Lee Green, and is the duly acting and qualified administrator of the estate of said Patricia Lee Green.

## II

That heretofore on the 26th day of August, 1963, at approximately the hour of 9:30 A.M., the said decedent was operating a Volkswagon in an easterly direction along the Grandview Road, a designated county arterial in Whatcom County, State of Washington. That as she was proceeding as aforesaid, one Alice Dunkin of Rural Route, Ferndale, was operating a 1950 Ford in a northerly direction along the J. J. Bell Road. That at the intersection of the said J. J. Bell Road with the Grandview Road in Whatcom County, Washington, the Dunkin 1950 Ford automobile struck the Volkswagon on the right side of the automobile in which the decedent was then driving. That the intersection of said J. J. Bell Road with the Grandview Road is controlled by a yield sign maintained by the Whatcom County and/or its agents. That on Friday, the 23rd day of August, 1963, the agents of the County were duly notified that said sign had been knocked down by certain persons and that the sign was laying on the ground at the time of the accident and was not erected again until the afternoon of the 26th day of August, 1963. That the Whatcom County Sheriff Department, a duly authorized agent of said County, and the Engineering Department of said Whatcom County, was

notified three days prior to this accident that said sign was not in place.

### III

That as a direct and proximate result of the collision of the two vehicles, the claimant's wife was killed and the claimant's son suffered personal injuries. *That claimant and his wife had been residents of Oregon for the period of six months immediately preceding this accident and claimant and his wife were on their way to Ketchikan, Alaska, where both were under contract to teach school in the Ketchikan School District for the year 1963-1964.*

### IV

That as a result of the death of claimant's wife, he incurred funeral expenses in the sum of $1,000.00 for his said wife, and that in addition thereto he has been deprived of her society, care and loss of consortium, and that it will be necessary for him to hire a housekeeper to take care of the minor child of the parties. That the decedent had a life expectancy of 46 years and was to earn the sum of $6300.00 as a school teacher in the Ketchikan School District for the year 1963-1964. That in addition thereto, decedent wife was a duly qualified teacher and had a teaching capacity for at least twenty-five (25) years. That in addition thereto the minor child of the claimant has been deprived of the aid, society, comfort and love and guidance of his mother, all to the damage of said claimant and his minor son in the sum of $150,000.00.

### V

That the failure of the County to re-erect said yield sign was a substantial factor and contributing cause of the death of said decedent and the injuries suffered by the minor child of the parties.

### VI

That James Glenn Green, aged 4 years, is the son of claimant. That as a result of the accident, the child sustained the following injuries: Contusions of the left external ear, and multiple minute lacerations of the ear; abrasion over the left flank, contusion to his left kidney, and shock, pain and suffering, all to the damage of said minor child in the sum of $10,000.00., plus medical expenses in the approximate amount of $900.00. (Italics mine.)

One can scarcely conceive of a more lawyerlike piece of draftsmanship than the foregoing. Although in my opinion it complies not only substantially but literally too with the statute, the real issue is that of substantial compliance. We said so in *Cook v. Yakima, supra*:

> "When the claim substantially complies with the legislative requirement and these ends are subserved, the claim has accomplished the purpose intended."

Similarly, in *Duschaine v. Everett*, 5 Wn.2d 181, 105 P.2d 18, 130 A.L.R. 134 (1940), we said that a substantial compliance is sufficient, and that the notice will be regarded as adequate where it effectuates the purpose of the statute and enables the defendant to identify, locate and investigate the claimant. We said, too, in that case that literal compliance with legislative and charter provisions concerning presentation of tort claims against cities is not required. *Duschaine v. Everett, supra*. Obviously, the same reasoning and principle applies to counties.

Emphasizing the concept of liberal construction to be given nonclaim statutes, we said in *Green v. Seattle*, 146 Wash. 27, 30, 261 Pac. 643 (1927):

> [S]tatutory requirements as to the filing of claims are to be liberally construed and not, as one case stated, so as to make them a "stumbling block or a pitfall to prevent recovery by meritorious claimants."

In *Okitsuki v. Seattle*, 115 Wash. 245, 197 Pac. 6 (1921), an action for wrongful death brought by an administrator on behalf of the surviving widow and children residing in Japan, we held that failure to give the wife's and children's place of residence was not fatal to the claim where the administrator's address had been set forth. We sustained the claim even though it is unlikely that stating the requisite information as to where the administrator lived supplied the city with much usable information.

In upholding the claim in *Okitsuki, supra*, we invoked a principle particularly pertinent to the instant case, saying of the defendant city:

> that if it considered it necessary or advantageous to ascertain the place of residence of the wife and children

for whose benefit the action is being prosecuted, it might elicit such information by proper inquiries, or by interrogatories before trial . . . .

Again, in *Caron v. Grays Harbor Cy.*, 18 Wn.2d 397, 139 P.2d 626, 148 A.L.R. 626 (1943), after pointing out the fatal deficiencies of a claim which failed to state the amount of damages and did not set forth in detail "the defects which caused the accident," we affirmed the idea of substantial compliance as the test of sufficiency.

The inescapable logic of these rules, as just stated, when taken together, is that *substantial* compliance with the statute is a condition precedent to the maintenance of an action for damages against the municipality . . . .

Even in a case where the claim said that the accident occurred between 41st and 42nd Streets on J Street and in fact there was no 42nd but a 43rd Street—the place of the defect, of course, being vital information—we held the claim good because there had been a bona fide intention to comply, no purpose to mislead, and the claim's defects were overcome by other information. We said:

"If it did not in fact mislead, but if its deficiencies or mistakes were helped out by other information given to the proper officers, or by other knowledge on their part, no matter how acquired, then it would turn the statute into a mere trap for the ignorant and unskillful, to deprive them of a right of action because of failing to do something which caused the municipality no injury and put it to no disadvantage." *Hammock v. Tacoma*, 40 Wash. 539, 82 Pac. 893 (1905).

In *Decker v. Seattle*, 80 Wash. 137, 141, 141 Pac. 338 (1914), we sustained the idea of substantial compliance as to a statement of residence by accepting supplemental information thereof saying, "In such a case, it is only reasonable to permit the claim to be supplemented by proof that the place of residence was not changed in the interval. So supplemented, the claim, obviously, was not, and could not have been, misleading."

Again, in *Wagner v. Seattle*, 84 Wash. 275, 146 Pac. 621 (1915), where an address given as 218, 21st Avenue was

subsequently amended to 208, 21st Avenue, we allowed the amendment, saying:

> While the lower court was not justified in allowing the amendment of the claim as to respondents' street address, it does not follow that this was error so prejudicial as to call for a reversal, since the evidence of the correct address was admissible without the amendment. The obvious purpose of these charter and statutory provisions is to insure such notice to the city as to enable it to investigate the cause and character of the injury, and where there is a *bona fide* attempt to comply with the law, and the notice filed actually accomplishes its purpose of notice, it is sufficient though defective in some particulars.

That the legislature deems substantial compliance sufficient to protect the counties may be seen in its forbearance to amend or change the provision by requiring more detailed information of the claimant's prior residence. Pertinent history of the statute shows that RCW 36.45.020 was enacted in 1919, Laws of 1919, ch. 149, § 1, p. 414; re-enacted in 1957, Laws of 1957, ch. 224, § 8, p. 885; and re-enacted again in 1963, Laws of 1963, ch. 4, § 36.45.020, p. 98, each time in identical language. In all these years, the legislature has not required, as it does in claims against first-class cities, "a statement of the actual residence of the claimant, *by street and number.*" RCW 35.31.010 (Italics mine.)

The statement of this court in *Hartley v. Tacoma School Dist. No. 10*, 56 Wn.2d 600, 354 P.2d 897 (1960), in connection with an action against the city of Tacoma for injuries sustained in slipping on an ice and snow covered sidewalk, bears repeating:

> The appellant has cited no case in which a court has held that a plaintiff should be denied his day in court because of a defective description in a claim when the defect did not mislead or inconvenience the defendant; and could such an authority be found, we would not be inclined to follow it.

Therefore, in my opinion, when plaintiff Green, in paragraph No. 3 of his claim, said:

That claimant and his wife had been residents of Oregon for the period of six months immediately preceding this accident and claimant and his wife were on their way to Ketchikan, Alaska, where both were under contract to teach school in the Ketchikan School District for the year 1963-1964.

and plaintiff Nelson, in paragraph No. 3 of his claim, in *Nelson v. Dunkin, supra,* stated:

That claimant and his son had been residents of the State of Alaska for a period of six months immediately preceding this accident.

each complied not only substantially but literally with the statute. Each case should be reversed and the two children and other claimants allowed their day in court.

ROSELLINI, C. J., FINLEY and HUNTER, JJ., concur with HALE, J.